# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DANIEL L. WILLIAMS,       )
                         )
      Plaintiff,       )
                         )
v.                    )       CV418-025
                         )
JOSE MORALES, Warden, and   )
NATHAN DEAL, Governor,     )
                         )
      Defendants.     )

FILED
Scott L. Poff, Clerk
United States District Court

By James Burrell at 1:16 pm, Mar 05, 2018

## REPORT AND RECOMMENDATION

*Pro se* prisoner Daniel Williams brings this 42 U.S.C. § 1983 action against the warden of his prison and the Governor to recover for injuries he suffered while incarcerated. *See* doc. 1 at 5-8. The Court granted him leave to proceed *in forma pauperisi* (IFP), doc. 5, and he returned the necessary forms, docs. 6 & 7. The Court, therefore, proceeds to screen his Complaint pursuant to 28 U.S.C. § 1915A.[1] Since he has failed to

---

[1] At the screening stage, the Court applies the familiar Fed. R. Civ. P. 12(b)(6) standards. *See Leal v. Ga. Dep't of Corr.*, 254 F. 3d 1276, 1278-79 (11th Cir. 2001). Factual allegations are, thus, taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n. 1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing standard for dismissal under Rule 12(b)(6)).

state a claim upon which relief may be granted, his Complaint should be dismissed.[2]

## I.     Background

Williams' allegations are straightforward.  He is 69 years old and has "a chronic care minor medical problems [sic]."  Doc. 1 at 5.  When he was being evacuated from Coastal State Prison in response to Hurricane Matthew, he was transported on a "Blue Bird Prison Transfer Bus."  *Id*. His hands and feet were restrained and secured to the bus, but no seatbelt was available.  *Id*.  Due to a combination of his being restrained, the lack of seatbelt, the speed of the bus, and bumps in the road, he was "tossed up and down falling out of [his] seat into the aisle, therefore injuring [his] neck and back."  *Id*.  He was provided with pain-relieving medication (Tylenol) when he arrived at the prison to which he was evacuated.  *Id*.

When he returned to Coastal, he reported ongoing pain and was examined by an "N.P.," presumably a nurse practitioner.  Doc. 1 at 6. She "advised [him] to go back to the dorm and exercise."  *Id*.   He

---

[2]  The issues identified below, although sufficient to support dismissal of plaintiff's claims, are not necessarily the only problems with his Complaint.  The lack of specific allegations against either named defendant, for example, might provide alternative grounds for dismissal.

followed her advice but suffered a seizure and was taken to an "emergency room," apparently at the prison. *Id.* "[His] whole body -- right and left side became numb, and [he] was in pain with [his] neck and back, [he] could not walk or stand up straight, [and his] body was partially paralyzed." *Id.* He was transferred to a hospital, where he was diagnosed with "a severe pinch[ed] nerve." *Id.* He was hospitalized for "about 30 days," and transferred to Augusta Medical State Prison. *Id.*

After further examination, doctors determined that Williams "needed a surgery fusion on [his] neck." Doc. 1 at 7. He had surgery in March 2017 and spent approximately nine days hospitalized at both a civilian and prison facility. *Id.* At the prison facility, he was housed "in a nasty room without a clean uniform . . . ." *Id.* He describes the treatment by unspecified "nursing staff" as "very cruel." *Id.* He nevertheless recovered and was returned to Coastal, where he currently receives "pain and nerve medication and physical therapy twice a week." *Id.*

In September 2017, Williams was evacuated from Coastal again, this time in response to Hurricane Irma. Doc. 1 at 7. He was transported by bus again, despite a prison official's instruction that he be

transported by van.  *Id.* at 8.  He explains that those directions were not followed because another official "said there was no vans [sic] available." *Id.*  Despite objecting to the mode of transportation, Williams does not allege that he suffered any injury because of his second bus trip.  *See id.*

## II.   Analysis

The Eighth Amendment requires that prison officials provide inmates with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1970) (quotes and cite omitted). A viable Eighth Amendment claim must satisfy both an objective and subjective prong.  The objective prong requires that the risk or defective condition be "objectively, sufficiently serious," constituting "the denial of the minimal civilized measures of life's necessities."  *Id.* at 834 (quotes and cite omitted).  The subjective prong requires an allegation that a prison official had "a sufficiently culpable state of mind," *id.*, by recklessly disregarding a risk that he actually percieved. *Id.* at 836.

Transporting Williams by bus, whether he was injured or not, does not violate the Eighth Amendment.  This Court "cannot say that riding in a van equipped with the manufacturer's car seats, seat belts, and

windows is a necessity," such that failure to provide such transportation "is a deprivation of the minimal measure of life's necessities or something that modern society would find intolerable." *Smith v. Sec'y Dept. of Corrs.*, 252 F. App'x 301, 304 (11th Cir. 2007). Even where the means of transportation is not suited to a prisoner's particular disability or results in debilitating injury, courts have declined to find the objective prong of an Eighth Amendment claim satisfied. *See Spencer v. Knapheide Truck Equip. Co.*, 183 F. 3d 902, 904, 906 (8th Cir. 1999) (transporting individuals in "patrol wagons" without seatbelts did not violate Eighth Amendment, despite plaintiff's injury during such transportation rendering him quadriplegic); *Smith*, 252 F. App'x at 304 (affirming dismissal "because Smith did not allege a sufficiently risky condition"); *Dexter v. Ford Motor Co.*, 92 F. App'x 637, 641 (10th Cir. 2004) (concluding that "a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension."). Even assuming that Williams' allegations concerning the various bumps ejecting him from his seat constituted a separate allegation against the bus driver, nothing suggests that his driving was even  -- let alone *more than* -- negligent. *See, e.g., Jackson v. Perry*, 2017 WL 3138553, at * 5 (S.D. Ga. July 24,

2017) (plaintiff injured when he was thrown to the floor of a transport van after driver exceeded the speed limit alleged no more than negligence); *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996) ("Allegations of a public official driving too fast for the road conditions are grounded in negligence, not criminal recklessness," under the *Farmer* standard).

Williams' claim that defendants were deliberately indifferent to the serious medical need arising from his injury fails as well. *See* doc. 1 at 10. He alleges that his injures "had escalated because . . . [the] N.P. recommended [he] do exercises instead of recommending I see a specialist creating a cause of deliberate indifference in how this situation should have been handle[d]." *Id.* at 6. His allegations make clear that he was treated, albeit (in his view) deficiently. A prisoner's disagreement with the type of medical care he receives is insufficient to support an Eighth Amendment violation. *See, e.g., Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [plaintiff/inmate] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."); *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a

matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Even assuming that the nurse's diagnosis and recommendation amounted to medical malpractice, it does not amount to a constitutional violation.  *See, e.g., Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle*, 429 U.S. at 106) ("Mere incidents of [medical] negligence or malpractice do not rise to the level of constitutional violations.").

Finally, Williams' vague complaints about the "nasty [hospital] room" and "very cruel" nursing staff do not state a viable claim.  "The Constitution does not mandate comfortable prisons."  *Farmer*, 511 U.S. at 832 (quotes and cite omitted).  Williams' allegations (assuming that they are not so conclusory as to be disregarded entirely) do not even imply the deprivation of basic sanitary conditions or inhumane treatment actionable under the Eighth Amendment.  *See, e.g., Brooks v. Warden*, 800 F.3d 1295, 1304-05 (11th Cir. 2015) (discussing authority supporting recognition that "the deprivation of basic sanitary conditions," such as "prolonged exposure to human excrement," violates the Constitution).  Assuming that Williams meant to assert a claim based

on those allegations, *see* doc. 1 at 9-12 (describing relief sought for each alleged violation and omitting any reference to hospital conditions), it should be dismissed.

### III.  Conclusion

Since Williams' Complaint fails to state any viable claim, it should be **DISMISSED**.  His request that counsel be appointed to assist him in litigating those claims, therefore, is **DENIED** as moot.   Doc. 4. Meanwhile, it is time for Williams to pay his filing fee.   His PLRA paperwork reflects an average monthly balance of $114.16 and average monthly deposits of $144.16.  Doc. 7 at 1.  He therefore owes an initial partial filing fee of $22.83.   *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  Plaintiff's custodian (or designee) shall remit that amount to the Clerk immediately.  Plaintiff's custodian (or designee) shall also set aside and remit 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

Also, the Clerk is **DIRECTED** to send this Report and Recommendation (R&R) to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required.  In the event he is transferred to another institution, his present custodian shall forward a copy of this R&R and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this R&R.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 5th day of March, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA