# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| DANIEL L. WILLIAMS, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV418-025 |
| JOSE MORALES, Warden, and NATHAN DEAL, Governor, | ) ) ) | |
| Defendants. | ) ) | |

FILED
Scott L. Poff, Clerk
United States District Court

By jburrell at 2:50 pm, May 04, 2018

## **ORDER**

*Pro se* prisoner Daniel Williams brought this 42 U.S.C. § 1983 action to recover for injuries he suffered while incarcerated. *See* doc. 9 at 2-4. In brief, the facts of his claim are as follows: Williams was evacuated from Coastal State Prison, where he was and remains incarcerated, in response to a threatened hurricane. He was evacuated by bus and, during the trip, he was ejected from his seat. Neither his Complaint nor his most recent filings indicate that he suffered any immediate effect beyond the minor discomfort and injuries that would be expected (more on that issue below). However, he eventually consulted with prison medical staff about persistent pain and he was advised to "exercise."

1

Several days after receiving, and apparently accepting, that advice his pain increased dramatically and he suffered a seizure. He was diagnosed with nerve damage in his back and neck, which has led to ongoing and allegedly permanent disability. This suit seeks compensation for his injury.

The Court screened his Complaint, pursuant to 28 U.S.C. § 1915A, and recommended that it be dismissed. Doc. 9 at 8. Williams objected to the Report and Recommendation (R&R) and seeks to amend his Complaint. Doc. 13 (objection); doc. 14 (Motion to Amend). Because his objection raises novel theories which merit further development, the Court **VACATES** the R&R.[1] As discussed below, Williams must clarify the nature of his claim.

Williams' objection raises several issues which are only tangential to the viability of his claim. *See* doc. 13 at 1-2.[2] His substantive

---

[1] Williams raises no objection to the portions of the R&R recommending that his claims be dismissed to the extent that they allege his rights were violated by the manner of his transport to his evacuation prison or by the conditions at the prison hospital. However, since he must file an Amended Complaint to continue pursuing his claims, which will supersede the original Complaint, those recommendations are moot.

[2] Williams objects that he never received "a service of process" and that he was "denied due process of the law by only receiving an order by Magistrate Judge Smith." Doc. 9 at 1. A *plaintiff* initiates a civil case by filing a Complaint. Fed. R. Civ. P. 3. The Complaint and a summons are then served *on the defendant*, to

objection, and the basis for his amendment motion, is that he should be allowed to add a medical malpractice claim. *See* doc. 13 at 3; doc. 14 (seeking to add claims against prison medical staff). He now expressly contends that "PA Burke . . . made ordinary mistakes of medical malpractice when she fail[ed] to conduct a thorough examination of the

---

provide him notice of the lawsuit pending against him. *See* Fed. R. Civ. P. 4 (detailing required contents of a summons and procedures for service of the Complaint and summons); *see also, e.g., Henderson v. United States*, 517 U.S. 654, 672 (1996) ("[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections."). Plaintiffs, as the source of the Complaint, need no such notice. Since service has not occurred, there can be no service or process defects.

To the extent that Williams objects that the R&R recommended dismissal prior to service of the Complaint, his objection is similarly misplaced. Under the Prison Litigation Reform Act (PLRA), the Court is *required* to review prisoner suits that seek "redress from a governmental entity or officer or employee of a governmental entity" *before* they are served. *See* 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e) (requiring the Court to dismiss "at any time" if it determines an action pursued *in forma pauperis* is frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant). Thus, there is no due process issue raised by the Court's screening, prior to service.

Finally, Williams objects that the R&R "failed to state the days spent in that [h]ospital was not a prison [h]ospital, it was St. Joseph Candler Hospital, Savannah[,] Georgia . . . ." Doc. 13 at 2. The page of the R&R he cites (page 2), however, doesn't mention *any* hospital stay. *See* doc. 9 at 2. The *next* page notes his transfer from what the Court inferred was the prison's emergency room to "a hospital" and that he remained there for "about 30 days." *Id.* at 3. None of the R&R's subsequent analysis turns on whether that hospital was a prison or civilian hospital. *See id.* at 4-8. Williams Complaint does not include even an allegation that the treatment he received was deficient. *See* doc. 1 at 6 (detailing his examination and diagnosis at St. Joseph Candler Hospital). The apparently inconsequential fact that the R&R referred to the hospital generally, rather than by name, does not undermine the R&R's analysis in any way. As Williams must supplement his Complaint, however, if there is some unspecified reason why the diagnosing hospital's identity is significant, he is free to explain.

Plaintiff['s] injury[, and] . . . instead . . . advised him to go back to his dormitory and exercise, which caused severe nerve damages to his neck, spine, [and] back . . . ." Doc. 13 at 3. He continues to suffer significant limitations as a result. *Id.* at 3-4. He further contends that such a malpractice claim may be brought in this Court through an exercise of its supplemental jurisdiction.

The R&R explained that even if the alleged facts might support a medical malpractice claim, such claims do not amount to constitutional violations. *See* doc. 9 at 7 (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Mere incidents of [medical] negligence or malpractice do not rise to the level of constitutional violations.")). Prison officials' deliberate indifference to an inmate's serious medical needs, however, "violates the inmate's right to be free from cruel and unusual punishment." *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (although prison conditions may be restrictive and harsh, prison officials must provide, *inter alia*, necessary medical care). To plead a violation of that right, a plaintiff must allege both an objectively serious medical need and that a defendant acted with

deliberate indifference to that need. *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010). Deliberate indifference, in turn, requires that a defendant "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Id.* (citing *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)).

Williams identifies no defect in the R&R's conclusion that conduct allegedly constituting malpractice does not viably support a § 1983 claim. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). His Complaint conceded that he had received *some* treatment for his injury. *See* doc. 9 at 2 (noting Williams' allegation that "[h]e was provided with pain-relieving medication (Tylenol) when he arrived at the prison to which he was evacuated."). In his objection he clarifies that, after he returned to Coastal, he was not examined by medical staff for more than five days, and he "therefore . . . endured pain over that period of time . . . ."[3] Doc. 13 at 2. Despite the novel assertion of consistent pain, the

---

[3] Williams' initial Complaint does not clearly assert the claim that the delay between his return to Coastal and his examination by the N.P. amounted to deliberate indifference. He alleged that he was examined when he arrived at his evacuation prison and was given Tylenol. Doc. 1 at 5-6. He alleges that he did not see the N.P. until days later, but does not assert that he was in pain during that entire span, or otherwise allege that his condition was, at that point, particularly serious. *See id.*

5

objection maintains that it was the exertion, pursuant to the N.P.'s advice, and not the delayed examination, "which caused severe nerve damage[]," and lead to his ongoing injuries. *Id.* at 3. Thus all of the pleadings, to date, leave open the question of how serious the symptoms were that Williams suffered between the time of his fall and his examination.

Under some circumstances, an inordinate delay in providing medical treatment amounts to a constitutional violation. *See Farrow v. West*, 320 F.3d 1235, 1246-47 (11th Cir. 2003) (fifteen-month delay in providing dental treatment was sufficient to support deliberate indifference claim). Whether it does depends upon the nature of the medical need and the reason for the delay. *Id.* at 1247 (quoting *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994)). Where the medical need is particularly grave, delays of days or even hours may be sufficient to state a claim. *Id.* For less serious conditions, even "considerable delay" does not automatically support a constitutional violation. *Id.*

Williams' allegations, even as developed in his most recent filings, do not provide enough information to conclude that the delay alleged

---

(noting that Williams' accepted the N.P.'s advice to "exercise" and his condition did not deteriorate until "three days later.").

could constitute deliberate indifference. Minor injuries, like the bumps and bruises one might expect from tumbling out of a bus seat, are not the sort of medical need that would be "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quotes and cite omitted). They are simply not the kind of serious injuries that trigger prison officials' Eighth Amendment obligations. *See, e.g., Young v. United States*, 2015 WL 3605052, at * 6 (M.D. Fla. June 8, 2015) ("Generally, other courts addressing bruises and lacerations have concluded that they do *not* constitute an objectively serious medical need," and collecting cases).

The seriousness of Williams' needs *before* the nurse practitioner allegedly exacerbated his injury by recommending exercise is the critical question for the viability of Williams' § 1983 claim. The fact that before its escalation there may have been a latent condition does not necessarily implicate the Eighth Amendment. Williams, therefore, must clarify his allegations concerning this critical period, and allege, if possible, the necessary objective and subjective components of his § 1983 claim.

7

Whether Williams should be allowed to pursue his malpractice claim in this Court depends upon the viability of his constitutional claim. "Federal courts are courts of limited jurisdiction[, and t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "In a given case, a federal district court must have jurisdiction under at least one of the three types of subject-matter jurisdiction: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997). The Court may also exercise "supplemental jurisdiction over . . . claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367; *see* doc. 13 at 2-3.

Although Williams correctly points out that the Court may have supplemental jurisdiction to consider state-law malpractice claims in some cases brought pursuant to § 1983, he misunderstands its scope. The exercise of supplemental jurisdiction depends upon the existence of

some basis for the Court's "original jurisdiction," *see* 28 U.S.C. § 1367(a) -- that is, the existence of at least one of the three bases for subject-matter jurisdiction identified above. If such a basis exists, the Court then has *discretion* to exercise jurisdiction over sufficiently related claims, where it otherwise would have none. *See, e.g., Lucero v. Trosch*, 121 F.3d 591, 5978 (11th Cir. 1997) ("[Section 1367] reflects a dichotomy between a federal court's *power* to exercise supplemental jurisdiction, § 1367(a), and its *discretion* not to exercise such jurisdiction, § 1367(c).").

Among the statutory reasons militating against exercise of supplemental jurisdiction is when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (discussing pre-statutory application of supplemental jurisdiction and advising that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). Whether the Court should exercise jurisdiction over Williams'

state-law malpractice claim depends, therefore, on whether his § 1983 claim survives.

Accordingly, Williams' request to file an Amended Complaint is **GRANTED**. Doc. 14. However, the version of the Amended Complaint Williams has attached to his motion, doc. 14-1, does not provide sufficient information to support his § 1983 claim. Williams must, therefore, provide a second version of the Amended Complaint that *briefly* details the facts of his injury between its occurrence and the alleged malpractice. *See* Fed. R. Civ. P. 8(a) (requiring that complaints include a "short and plain statement of the claim"). That version must be complete and stand on its own since it will supersede all prior versions. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n. 1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading"). It must also contain sufficient facts to support *each* claim (*i.e.*, the § 1983 claim and the malpractice claim) against *each* defendant, including presentation of facts supporting

each element of each legal claim. *See Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007) (complaints must contain facts "sufficient to raise a right to relief above the speculative level"). Mere conclusions that defendants violated the law are not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Williams is further advised that, although the Court will charitably construe his pleadings, it is not able to plug factual or legal holes. *See, e.g., Boles v. Riva*, 565 F. App'x 845, 846 (11th Cir. 2014) ("[E]ven in the case of *pro se* litigants [the liberal construction of pleadings] does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." (quotes and cite omitted)).

Williams must sign and place his Amended Complaint in his prison's mail system within 30 days of the date of this Order. Failure to do so may result in a recommendation of dismissal on abandonment grounds. *See* Fed. R. Civ. P. 41.

**SO ORDERED,** this <u>4th</u> day of May, 2018.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA