# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

DANIEL L. WILLIAMS,                )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )        CV418-025
                                   )
JOSE MORALES, Warden, and          )
NATHAN DEAL, Governor,             )
                                   )
    Defendants.                    )

FILED
Scott L. Poff, Clerk
United States District Court

By tblanchard at 3:06 pm, Jan 10, 2019

## ORDER

*Pro se* prisoner Daniel Williams was evacuated by bus from Coastal State Prison (CSP), where he was and remains incarcerated, in response to a threatened hurricane. Docs. 9 & 21. He fell, and allegedly suffered significant injuries in that bus ride. *Id*. After preliminary screening pursuant to 28 U.S.C. § 1915, the Court ordered Williams to amend his Complaint to "*briefly* detail[ ] the facts of his injury between its occurrence and the alleged malpractice" he believes CSP staff committed in his treatment. Doc. 18 at 10.

Williams has amended his Complaint to explain that when he first complained about falling on the bus on his way to Telfair State Prison

1

(TSP), he was seen by medical staff and issued Tylenol. Doc. 18 at 5. He did not see a doctor or receive an X-ray, and he contends that TSP medical staff should have at least performed some imaging study to determine the extent of his injury. *Id*. When he returned to CSP, Williams again complained of "having sharp pains in his neck and back area," but was advised by Nurse Burke to "go back to [his] dormitory and exercise" because she could not "make any assessments of [his] medical complaint" to order radiological imaging or increased pain medication. *Id*. at 6.

A few days later, Williams "had a seizure, collapsed to the floor, and urinated in [his] pants" while "doing minor exercises." *Id*. He was rushed to the hospital and, after various rounds of diagnostic imaging and a spinal tap, was diagnosed with "severe[ly] pinched nerves in his back, spin[e], and neck" and was referred for surgery. *Id*. at 6-7. His post-surgical recovery was miserable, as he was allegedly left unclean in the same jumpsuit for over a week "in a filthy room on the hospital floor." *Id*. at 8. Williams continues to suffer from pain and an impaired gait, and seeks over a million dollars in damages. *Id*. at 9-10.

The Court's initial screening order explained that even if the alleged facts might support a medical malpractice claim, such claims do not amount to constitutional violations. *See* doc. 9 at 7 (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Mere incidents of [medical] negligence or malpractice do not rise to the level of constitutional violations.")). An inmate's right to be free from cruel and unusual punishment is only violated where a plaintiff both had an objectively serious medical need[1] and some prison official or officials were deliberately indifferent to that need. *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010); *see generally Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (although prison conditions may be restrictive and harsh, prison officials must provide, *inter alia*, necessary medical care). Deliberate indifference, in turn,

---

[1] A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *see, e.g., Hutchinson v. N.Y. State Corr. Officers*, 2003 WL 22056997 at * 5 (S.D.N.Y. Sept. 4, 2003) (a "condition of urgency, one that might produce death, degeneration or extreme pain"). Only "those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Mere 'malpractice' allegations do not suffice." *Jackson v. Franks*, 2012 WL 6626020 at * 1 (S.D. Ga. Dec. 19, 2012).

requires that a defendant "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper*, 592 F.3d at 1234 (*citing Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)).

Williams complained about pain when he arrived at TSP, and was given Tylenol. Doc. 21 at 5. Even assuming that such pain constituted a "serious medical need" within the meaning of the Eighth Amendment, he has affirmatively pled that TSP medical staff and Nurse Burke were *not* deliberately indifferent to that need. After all, TSP medical staff responded to his complaints of "sharp pain" in his shoulder and back by treating him with pain medication. They may have misapprehended the severity of his injuries, but they credited his complaints and provided care.[2] Nurse Burke, too, treated Williams' complaints of pain. She

---

[2] Williams hangs his claim on the TSP's delay in getting radiological imaging of his back. Doc. 21 at 5. While a "doctor's decision to take an easier and less efficacious course of treatment" may constitute deliberate indifference, *Wallace v. Sheriff*, 518 F. App'x 621, 622 (11th Cir. 2013), differences of opinion between an inmate and medical staff in how to treat an injury do not, *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). *See Gonzalez v. Sarreck*, 2011 WL 5051341 at * 18 (S.D.N.Y. Oct. 24, 2011) ("It is well settled that 'disagreements over medications, diagnostic techniques, forms of treatment, or the need for specialists or the timing of their intervention' are insufficient under § 1983"). Put differently, Williams' opinion that TSP should have taken additional, precautionary steps in his treatment plan does not recast their treatment as deliberately indifferent to his serious medical needs.

Moreover, while an inordinate delay in providing medical treatment *may* amount to a constitutional violation, *see Farrow v. West*, 320 F.3d 1235, 1246-47 (11th Cir. 2003)

recommended exercise. Unfortunately, that exercise[3] "aggravated" plaintiff's injury. But bad medical advice does not a constitutional violation make. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985) (a prisoner cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) ("mere accidental inadequacy, negligence in diagnosis or treatment, [and] even

---

(fifteen-month delay in providing dental treatment was sufficient to support deliberate indifference claim), whether it does depends upon the nature of the medical need and the reason for the delay. *Id.* at 1247. Where the medical need is particularly grave, delays of days or even hours may be sufficient to state a claim. *Id.* But with less serious conditions, even "considerable delay" does not automatically support a constitutional violation. *Id.*

Here, Williams was bumped out of his seat on the bus and complained of "sharp pain." Doc. 21 at 5. That, of course, is not an injury "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quotes and cite omitted). "Minor injuries, like the bumps and bruises one might expect from tumbling out of a bus seat," doc. 18 at 7, are simply not the kind of serious injuries that trigger prison officials' Eighth Amendment obligations. *See, e.g., Young v. United States*, 2015 WL 3605052 at * 6 (M.D. Fla. June 8, 2015) (collecting cases). In other words, one week's delay in getting an x-ray to evaluate an apparently non-serious injury, even when that benign appearance belies a serious latent condition, does not rise to the level of denial of medical care within the meaning of the Eighth Amendment. The fact that there may have been a serious latent condition, which presented itself post-exercise, does not prove that Williams had a serious medical need within the meaning of *Farrow* before that presentation.

[3] It is unclear just how strenuously plaintiff "exercised" alone in his dormitory, or even what exercises he did that exacerbated the uncomfortable but tolerable "sharp pain" in his shoulder and back into disabling spinal "pinched nerves" requiring emergency surgery. Doc. 21 at 5-8.

5

medical malpractice" do not give rise to § 1983 liability); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (even gross negligence is insufficient to establish a constitutional violation). At best, Williams has a malpractice claim for shoddy medical advice. Because that's not actionable under 42 U.S.C. § 1983, *see Estelle*, 429 U.S. at 105, this claim should be **DISMISSED** from the case.

Having concluded that Williams has not set forth an Eighth Amendment claim, the Court ought not exert supplemental jurisdiction over a potential state-law malpractice claim. *See* 28 U.S.C. § 1367(a) (requiring the existence of some basis for the Court's "original jurisdiction" before a Court may exercise jurisdiction over sufficiently related claims, where it otherwise would have none); *e.g., Lucero v. Trosch*, 121 F.3d 591, 5978 (11th Cir. 1997) ("[Section 1367] reflects a dichotomy between a federal court's *power* to exercise supplemental jurisdiction, § 1367(a), and its *discretion* not to exercise such jurisdiction, § 1367(c)."). Williams' state law claims for medical malpractice and negligence, therefore, should be dismissed as well. *See* 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have

6

encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

In sum, Williams' Amended Complaint should be **DISMISSED** without prejudice.[4]  He has failed to allege facts supporting an Eighth Amendment claim for denial of medical care, and in the absence of any federal claim the Court should decline to retain jurisdiction over his state law claims.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

---

[4] Despite the lack of any apparent basis for viable amendment, plaintiff's opportunity to object to this Report and Recommendation within 14 days of service, see *infra*, affords him an opportunity to resuscitate his case.  He may also submit a Second Amended Complaint during that period, if he believes it would cure the legal defects discussed above.  *See Willis v. Darden*, 2012 WL 170163 at * 2 n.3 (S.D. Ga. Jan. 19, 2012) (citing *Smith v. Stanley*, 2011 WL 1114503 at * 1 (W.D. Mich. Jan. 19, 2011)).  Further, this dismissal is without prejudice to Williams refiling his claims in state court.

7

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this __10th__ day of January, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA